```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
UNITED STATES OF AMERICA

    -against-

JULIO CESAR VALENCIA-LOPEZ,

              Defendant.

**MEMORANDUM & ORDER**
**05-CR-841 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Julio Valencia-Lopez was arrested in 2005 and pleaded guilty in 2007 to one count of heroin distribution conspiracy. At sentencing, the court calculated that his offense level was 30, with a criminal history Category I, and his Guidelines range was 292-365 months. He was sentenced to the low end of the Guidelines range, 292 months in custody, with an anticipated release date of August 11, 2026. (Gov't Opp. to Mot. for Compassionate Release ("Opp.") (Dkt. 66) at 2.) In 2020, he sought compassionate release, which the court denied with leave to renew. (*See* Ltr. (Dkt. 62).)

On December 28, 2021, Mr. Valencia-Lopez filed this renewed motion for compassionate release. (Mot. for Compassionate Release ("Mot.") (Dkt. 64).) The Government opposed the motion on January 5, 2022. In a supplemental filing on January 7, the Government maintained its opposition, but noted that, "[i]f the defendant's medical conditions change, the government is amenable to reconsidering its position." (Gov't Ltr. (Dkt. 67).)

For the reasons explained below, Mr. Valencia-Lopez's motion is GRANTED, effective upon his signing of a stipulation agreeing to an Order of Removal and waiving his rights to oppose his deportation. This order is stayed for up to fourteen days, to allow the Bureau of Prisons (the "BOP") to coordinate Mr. Valencia-Lopez's transfer to the custody of the immigration authorities in anticipation of his deportation.

I.  BACKGROUND

A.  Defendant's Offense Conduct and Sentencing

On November 8, 2005, Mr. Valencia-Lopez was indicted by a grand jury on one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. (Indictment (Dkt. 1).) On March 14, 2007, he pleaded guilty to the sole count in the indictment. (Mar. 14, 2007 Min. Entry (Dkt. 17).) The court calculated that he had a base offense level of 38 and that he was in Criminal History Category I, and that the applicable Guidelines range was 292-365 months in custody. (Sentencing Tr. (Dkt. 40) at 4:22-25, 6:22-24, 21:1-5.) He was sentenced on March 26, 2008, to the low end of that range: 292 months in custody, to be followed by five years of supervised release. (Judgment (Dkt. 32).) With an anticipated release date of August 11, 2026, he has served just shy of 20 years of his approximately 24-year sentence.

B.  Defendant's Health Status and Medical Conditions

Defendant, who is 59 years old, is in remission from stomach cancer following chemotherapy treatment. (Opp. at 1.) He has had three COVID-19 inoculations:[1] He received his first dose of

---

[1] For adults, the Centers for Disease Control and Prevention (the "CDC") recommends that individuals should stay "up to date" on COVID-19 vaccinations.

The CDC defines "fully vaccinated" to mean that an individual has received a "primary series" of vaccination, which consists of a two-dose series of the Pfizer or Moderna vaccine, or a single dose of Johnson & Johnson (but notes that the Pfizer and Moderna vaccines are preferred to the J&J one).

The CDC defines "up to date" to mean that "a person has received all recommended COVID-19 vaccines, including any booster dose(s) when eligible." It clarifies that this definition "includes additional doses for individuals who are immunocompromised or booster doses at regular time

the Pfizer vaccine on March 23, 2021; his second dose on April 13, 2021; and a booster on December 7, 2021. (Opp. at 1 n.1.) On January 5, 2022, Mr. Valencia-Lopez reported to the court that he was experiencing facial paralysis and that, despite his efforts to see a doctor at FCI Fort Dix where he is detained, he had not received medical attention. (Def.'s Ltr. (Dkt. 65) at 1.) Subsequently, the Government advised the court that he was treated on January 7 and diagnosed at that time with Bell's Palsy, an affliction of unknown origin that causes facial paralysis. (Govt. Ltr.)

## II. LEGAL STANDARD

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), authorizes a defendant to bring a motion for compassionate release after satisfying a statutory exhaustion requirement not at issue here. *See United States v. Jones*, 17 F.4th 371, 371 (2d Cir. 2021). Before granting a motion for release, the court must find that release is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). In addition, a district court must consider the applicable sentencing factors set out in 18 U.S.C. § 3553(a) and conclude that they weigh in favor of release. Thus, "a finding of extraordinary and compelling reasons is necessary, but not sufficient, to grant a defendant's motion for

---

points," and, specifically, that "[i]ndividuals who are moderately or severely immunocompromised should get an additional primary shot and a booster shot."

Stay Up to Date with Your Vaccinations, Ctrs. for Disease Control and Prevention (Jan. 16, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html (last visited Jan. 19, 2022). Because the Government reports that Mr. Valencia-Lopez has received two primary doses of the Pfizer vaccine and one booster shot, it appears that he is fully vaccinated but may not be "up to date," depending on the appropriate interpretation of "moderately or severely immunocompromised" health status.

compassionate release." *United States v. Keitt*, 21 F.4th 67, 69 (2d Cir. 2021).

The defendant bears the burden of demonstrating his or her eligibility for compassionate release. *See United States v. Antney*, No. 17-cr-229 (CBA), 2021 WL 4502478, at *1-2 (E.D.N.Y. Sept. 30, 2021) (*citing United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

### A. Extraordinary and Compelling Circumstances Exist

It is within the district court's "discretion to consider whether any reasons" raised by Defendant are "extraordinary and compelling." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "The Court need not find a single dispositive circumstance to determine that extraordinary and compelling reasons exist; rather, it may consider whether the totality of the circumstances justify such a finding." *United States v. Piggott*, No. 94-cr-417 (SHS), 2022 WL 118632, at *2 (S.D.N.Y. Jan. 12, 2022).

Courts have diverged in their views on how the state of the ongoing COVID-19 pandemic, including the emergence of recent variants of concern ("VOCs"), impacts their *Brooker* analyses of extraordinary and compelling circumstances. *See, e.g., United States v. Rose*, No. 03-CR-1501 (VEC), 2022 WL 19174, at *1 (S.D.N.Y. Jan. 3, 2022) ("[T]he COVID-19 pandemic, including the wildly contagious Omicron variant, constitutes an extraordinary and compelling reason to grant the requested relief."); *see also United States v. Arango*, No. 15-cr-104, 2020 WL 3488909, at *2 (S.D.N.Y. June 26, 2020) (holding that the threat of COVID-19 may constitute an extraordinary and compelling reason supporting compassionate release); *United States v. Mallay*, No. 02-cr-778 (SJ), 2021 WL 5718301, at *7 (E.D.N.Y. Dec. 1, 2021) (courts may consider "the proliferation and status of [COVID-19] infection at defendant's facilities"); *United States v. Diaz*, No. 14-cr-108 (KPF), 2022 WL 19760, at *3 (S.D.N.Y. Jan. 3, 2022) ("Courts in this District have granted, and denied, compassionate

release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.") (collecting cases).

Courts have also reached conflicting conclusions as to whether vaccination against the Coronavirus supports early release or counsels against it. *Compare, e.g., Diaz*, 2022 WL 19760, at *4 (denying release based in part on movant's vaccination status) (collecting cases), *with United States v. Mansourov*, No. 17-cr-164 (JBA), 2021 WL 6063235, at *3 (D. Conn. Dec. 22, 2021) ("The Court cannot agree that [movant's] vaccination status, considered without context, weighs against a reduced sentence.").

It is this court's view that the implications of the pandemic must be considered alongside any relevant risk factors to evaluate whether extraordinary and compelling circumstances support early release. *See United States v. Guerra*, No. 10-cr-147 (NGG), 2020 WL 6700084, at *2 (E.D.N.Y. Nov. 13, 2020) (although "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release," a sentence modification may be warranted if the movant also demonstrates "additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease"). In early December 2021, in *United States v. Lino*, this court concluded that the combination of those circumstances did not justify release, where the movant—also a cancer survivor in his fifties who had been at least partially vaccinated against COVID-19—failed to show that his health condition prevented him from engaging in day-to-day activities or that he was unlikely to return to his criminal conduct if released, after allocuting to racketeering predicated on murder and other acts. No. 02-CR-307-8 (NGG), 2021 WL 5759699, at *3 (E.D.N.Y. Dec. 3, 2021). Here, in contrast, the current circumstances of the pandemic; of Mr. Valencia-Lopez's health; of his conviction and criminal history; of the substantial percentage of

5

his custodial sentence that he has already served; and of his immigration status compel a contrary conclusion.

As a threshold matter, the COVID-19 landscape has changed dramatically within the past month alone as the current surge, driven by the Omicron and Delta VOCs. The rapid spread of these highly transmissible VOCs has resulted in higher rates of breakthrough infections generally, with prison and immunocompromised populations increasingly susceptible to those breakthrough cases. *See, e.g.*, *United States v. Brunetti*, No. 01-cr-257 (JFK), 2022 WL 92753, at *4 (S.D.N.Y. Jan. 10, 2022) ("In light of the rapid spread of the Omicron variant and its partial resistance to the COVID-19 vaccines, the Court . . . concludes that [movant] has established that extraordinary and compelling circumstances' support his release."); *United States v. Johnson*, No. 98-cr-860-7 (ARR), 2021 WL 5755047, at *4 (E.D.N.Y. Dec. 3, 2021) ("The risk of breakthrough infection is greater among incarcerated individuals than members of the general public."); Ctrs. for Disease Ctrl. and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html (last visited Jan. 18, 2022) ("Individuals who are moderately or severely immunocompromised should get an additional primary shot and a booster shot."); *United States v. Reyes*, No. 11-cr-1, 2021 U.S. Dist. LEXIS 99864, at *6 (D. Conn. May 26, 2021) (granting compassionate release for fully vaccinated movant where "newly available data describe 'breakthrough infections' caused by COVID variants in vaccinated populations").

Factors specific to Mr. Valencia-Lopez further support the court's finding of extraordinary and compelling circumstances. *First*, Mr. Valencia-Lopez has served just shy of 20 years of an approximately 24-year sentence, a little over 80% of it. This court has previously explained its view that detention during the pandemic has been "'more punitive' . . . than before—'essentially the equivalent of either time and a half or two times what would ordinarily

be served,'" *United States v. Elias*, No. 18-cr-33 (NGG), 2022 WL 125721, at *2 (E.D.N.Y. Jan. 13, 2022) (quoting Sentencing Tr. at 17:17-18:5, *United States v. Gonzalez*, No. 18-cr-699 (JPO) (S.D.N.Y. April 16, 2021) (Dkt. 250)). From that perspective, Mr. Valencia-Lopez has, functionally, completed his term of custody. *Second*, Mr. Valencia-Lopez has affirmed to this court that his reentry plan includes voluntary surrender to immigration authorities, which will sever his ties to the community in which he committed his crime of conviction nearly twenty years ago. (Mot. at 15); *see United States v. Rose*, No. 03-cr-1501 (VEC), 2022 WL 19174, at *2 (S.D.N.Y. Jan. 3, 2022) (granting early release where movant stipulated to consenting to deportation). And, *third*, Mr. Valencia-Lopez's health status and ability to receive treatment from the BOP is not unconcerning. Guidance from the Centers for Disease Control and Prevention (the "CDC") suggests that he may be more susceptible to severe illness caused by the Coronavirus as his history of chemotherapy treatments may have weakened his immune system.[2] Moreover, he asserts that his recent facial paralysis went initially untreated, and he apparently only received a diagnosis and medication after the court was notified of the delay. The conditions of confinement—especially an apparent failure to provide adequate medical care, which is a concern that is inherently heightened during any Coronavirus surge—may support reducing a sentence. *See United States v. Martinez*, 2022 WL 126306 (S.D. Cal. Jan. 13, 2022) ("[T]he

---

[2] People with Certain Medical Conditions, Ctrs. for Disease Control and Prevention (Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 19, 2022) ("Treatments for many types of cancer can weaken your body's ability to fight off disease. At this time, based on available studies, having a history of cancer may increase your risk" of experiencing "severe[] ill[ness] from COVID-19.").

court is *not* reassured by the lengthy description of the BOP's efforts to mitigate the spread of COVID-19 in federal prisons." (emphasis in original).).

These circumstances amount, in totality, to extraordinary and compelling ones. Accordingly, the court turns next to the § 3553(a) factors.

### B. The Section 3553(a) Factors Support Early Release

"[T]he weight to be given any § 3553(a) factor[] is a matter firmly committed to the discretion of the sentencing judge and is beyond . . . [appellate] review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." *United States v. Florez*, 447 F.3d 145, 158 (2d Cir. 2006).

Mr. Valencia-Lopez's crime of conviction—heroin distribution—was serious, and that gravity is reflected in the lengthy Guidelines range of 292-365 months that was calculated at sentencing. He was sentenced to the low end of that range, based in part on the court's conclusion that his lack of priors supported the determination that he was in Criminal History Category I. He has now served close to two decades of that sentence And, as discussed, approximately two of those years have been served under the unusually difficult circumstances imposed by the pandemic, which the court credits as more punitive than it would be otherwise. Accordingly, the seriousness of the crime does not counsel in favor of denying Mr. Valencia-Lopez's motion.

Nor do the sentencing goals of deterrence, protecting public safety, or ensuring that the defendant receive adequate correctional treatment. If specific deterrence has not been achieved after twenty years of detention, the balance of four remaining years—or less, with any applicable good time credit—is unlikely, in any practical sense, to tip the scales toward a law-abiding life. And neither general deterrence, public safety concerns, nor the need to provide additional correctional treatment require the

movant to remain in custody. *See, e.g., United States v. Afanasyev*, No. 17 CR. 350 (LAP), 2020 WL 6395303, at *2 (S.D.N.Y. Oct. 30, 2020) ("Thus, upon release from his present incarceration, Mr. Afanasyev would either be released to ICE custody or deported immediately. Accordingly, the safety of the community would not be adversely affected by [his] release from his present incarceration."). Nor would his health status threaten the safety of the community: the court favorably credits Mr. Valencia-Lopez's decision to get vaccinated, as inoculation makes him less likely to contribute to the spread of the pandemic. In sum, the court concludes that the § 3553(a) factors favor early release as well.

### III. CONCLUSION

Extraordinary and compelling circumstances and the application of the §3553(a) factors support Mr. Valencia-Lopez's release. For the reasons explained above, his motion [Dkt. 64] is granted, effective upon his signing of a stipulation agreeing to an Order of Removal and waiving his rights to oppose his deportation.

SO ORDERED.

Dated:   Brooklyn, New York
         January 21, 2022

                                              s/Nicholas G. Garaufis
                                              _____
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge